USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/23/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JAMES BOWEN,

Defendant.

18-CR-00205-2 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant James Bowen ("Defendant") was initially charged in a Felony Complaint on September 27, 2017 and then by grand jury Indictment with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF Nos. 2 & 32.) Before the Court is Defendant's Motion seeking a bill of particulars, disclosure and discovery, and the suppression of certain statements. (ECF No. 56.) For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The facts herein are taken from the Complaint, the Indictment, and documents appended to Defendant's motion,[1] and the Government's response to Defendant's motion.

In the early hours of July 1, 2017, around 3:50 AM, police officers of the Yonkers Police Department were called to the vicinity to a Yonkers apartment building. (Compl. ¶ 3(b).) There, they observed two men, later identified as Defendant and James Gaines, standing next to each other outside of the building. (*Id.*) Defendant had cuts on his face and blood on his face and body. (*Id.*) He told the police officers that he had been stabbed. (*Id.*) After Defendant was taken to the hospital, the officers followed a trail of blood to another apartment building. (*Id.* ¶3(b), (c).)

---

[1] Defendant did not submit an affidavit with his motion.

Meanwhile, around 4:00 AM, a police officer was called to Yonkers's St. Joseph's Medical Center, where he saw a shirtless man with gunshot wounds stumbling around the parking lot. (*Id.* ¶ 3(a).) The man told the officer that he had been shot in the area of the apartment building where the police had found Defendant and Gaines. (*Id.*) He also said that he stabbed the person who shot him, including in the face. (*Id.*)

Later that morning, the officers spoke with a woman who lived in the apartment building and said that her boyfriend, "James," sometimes stayed with her at that apartment ("Apartment"). (*Id.* ¶ 4.) She consented to a search of the Apartment. (*Id.*) At the Apartment, the officers found two firearms in a half-open floral bag with extra ammunition—one .380 caliber pistol which was partially loaded and one .38 caliber revolver, also partially loaded. (*Id.*) They also found mail addressed to James Gaines. (*Id.*)

Police obtained and reviewed surveillance video from the apartment building from between 3:00 and 4:00 AM from that morning which showed two men, one of them holding a gun and bleeding profusely. (*Id.* ¶ 6.) It appears to show the bleeding man pass a gun to the other man. (*Id.*) Then, both men walk up the stairs leading to the Apartment. (*Id.*) The man who is not bleeding enters the Apartment with the gun and then exits without holding a gun. (*Id.*) The men then leave the apartment building, and exterior video surveillance shows that the men were James Gaines and Defendant. (*Id.*)

Gaines was subsequently interviewed by detectives with the Yonkers Police Department. (*Id.* ¶ 7.) He was informed that he was being detained and, read his *Miranda* rights, and waived those rights. (*Id.*) Gaines told the police that he was present during a fight between Defendant and another man the previous evening. (*Id.*) During the fight, he found the two guns in the street and he placed them in the floral bag. (*Id.*)

Defendant was interviewed after he was released from the hospital, but he did not waive his *Miranda* rights. (Government's Opp'n to Def.'s Mot. ("Government's Opp'n") p. 2, ECF No. 59.) During the process of completing the booking form, a police officer asked Defendant questions about his background and biographical information and whether the Defendant "[was] right-handed or left-handed." (Burke Affirmation ¶ 6 & Ex. D, ECF No. 57.) Defendant responded that he was right handed. (Def.'s Mem. in Supp. ("Def.'s Mot.") p. 14, ECF No. 58.) Eventually, Defendant was charged with the following state crimes: criminal possession of a weapon in the second degree for possessing a loaded handgun outside of his home and assault in the second degree for causing physical injury by means of a deadly weapon. (Government's Opp'n p. 3.)

In September, the United States Attorney's Office adopted this case and charged both Gaines and Defendant with being felons in possession of firearms in violation of 18 U.S.C. § 922(g). (*Id.*) Defendant was informed of and arrested on the federal charge on September 28, 2017. (Burke Affirmation ¶ 9 & Ex. G.) Defendant invoked his right to counsel. (Def.'s Mot. p. 14.) The arresting agents advised him that "he should not say anything regarding the case" and that they would not ask him questions regarding his federal charges. (*Id.*) They also "advised [Defendant] of the potential exposure related to the federal charges and the nature of cooperation in the federal system, should [Defendant] decide to cooperate." (Burke Affirmation ¶ 9 & Ex. G.) Defendant then made two statements: "I fought for my life. I snatched the gun and it went off. Afterwards, I gave it to someone to give to the police;" and "Would it have been better if I just waited and handed the gun to the police when they got there?" (Def.'s Mot. p. 14.)

On March 13, 2018, a grand jury issued an indictment charging both Defendant and Gaines with violations of § 922(g)(1) and (2). (Government's Opp'n p. 3); (ECF No. 32.)

**DISCUSSION**

As a threshold matter, Defendant's motions for a bill of particulars and for discovery are procedurally barred by Local Criminal Rule 16.1 for the Southern and Eastern Districts of New York. According to Rule 16.1:

> No motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement.

Defendant has failed to file such an affidavit, and there is no evidence that Defendant's counsel and the Government have conferred or attempted to resolve the issues before the Court. Based on the absence of a Rule 16.1 affidavit, the Court may deny Defendant's motions for discovery and request for bill of particulars. *United States v. Minaya*, 395 F. Supp. 2d 28, 32 (S.D.N.Y. 2005).

Had Defendant complied with Local Rule 16.1, his motion on these issues would still be denied, as discussed below.

## I.      Request for bill of particulars

Defendant seeks a bill of particulars on the sole count charged against him and requests that the Government be required to identify the specific firearm they claim that Defendant possessed.

A bill of particulars is only necessary "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). The central question is whether the "information sought is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y.

4

1990).  Typically, where the information sought "is provided in the indictment or in some acceptable alternate form," such as discovery, "no bill of particular is required." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987).

Here, Defendant has not shown that a bill of particulars is necessary.  Although the Indictment does not state the specific firearm Defendant possessed, it contains sufficient information to advise Defendant of the specific act of which he is accused.  Based on the Indictment, Defendant is accused of, as an individual convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessing a firearm on or about July 1, 2017.  The Indictment further specifies that the firearm was either a .380 caliber Cobra pistol, Model CA 380 or a .38 special Taurus revolver, Model 85.  The exact firearm Defendant allegedly possessed of the two identified in the Indictment is not necessary to proving the underlying crime.  *See United States v. Leahy*, 473 F.3d 401, 410 (1st Cir. 2007) ("Congress did not intend the possession of a particular firearm to be an element of a § 922(g)(1) violation." (quoting *United States v. Verrecchia,* 196 F.3d 294, 301 (1st Cir. 1999) (internal quotation marks omitted)).  The statute simply prohibits specified individuals from possessing "any" firearm or ammunition; it does not distinguish between Cobra pistols, Taurus revolvers, or any other sort of firearm.  Possession of any firearm or ammunition is all that is necessary.

Defendant argues that the Indictment is also insufficient because it does not specify the time or the place where Defendant allegedly had possession of the firearm.  If the location and time of Defendant's alleged possession of the firearm were necessary to advise Defendant of the specific acts of which he is accused, the Court would still decline to require a bill of particulars.  No bill of particulars is warranted because that information has already been provided to Defendant in an acceptable alternate form in the Complaint.  (Compl. ¶¶ 1 & 6); *see United*

*States v. Morgan*, 690 F. Supp. 2d 274, 284 (S.D.N.Y. 2010) ("If the information the defendant

seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or a

criminal Complaint, no bill of particulars is required.").

## II.     Discovery and disclosure requests

Defendant seeks discovery of the material the Government intends to use in its case-in-

chief, information on the Government's experts, any evidence the Government intends to use at

trial, evidence relating to Gaines's statements about Defendant, and minutes of the grand jury

proceedings, among other materials.  Further, he requests that the Court direct the Government to

disclose witness statements and Rule 404(b) evidence thirty days prior to jury selection.

Through its opposition to Defendant's motion, the Government stated that it has already

produced (1) the Rule 16 evidence it intends to use in its case-in-chief; (2) medical and ballistics

reports; (3) Gaines's post-arrest statement implicating Defendant; (4) expert reports relating to

the extraction of data from a cellphone; (5) *Brady* material, which is being produced on a rolling

basis; (6) and field interviews from the area of the incidents.  (Government's Opp'n p. 4.)  The

Government admitted that it has not yet disclosed the identity and proposed testimony of expert

witnesses, evidentiary exhibits, *Giglio* material, witness statements, or Rule 404(b) evidence, but

stated that it will do so once directed by the Court. (*Id.* pp. 4 – 5.)

What remains for the Court are the issues of the grand jury minutes and legal instructions

and of the timeframe for disclosure of the undisclosed material.

Disclosure of grand jury proceedings is not warranted here.  A court may order disclosure

of certain grand jury proceedings "at the request of a defendant who shows that a ground may

exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R.

Crim. P. 6(e)(3)(E)(ii).  Disclosure of grand jury proceedings is analyzed within the contours of

"a long-established policy that maintains the secrecy of the grand jury proceedings in the federal

courts." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958). The "indispensable secrecy" of grand jury proceedings should not be broken except where compelling necessity exists. *Id.* The defendant must show "with particularity" when such a need outweighs the countervailing policy of secrecy. *Id.* In instances where the need for disclosure outweighs the policy of secrecy, such secrecy is "lifted discretely and limitedly." *Id.* at 682 – 83; *United States v. Silver*, 103 F. Supp. 3d 370, 381 (S.D.N.Y. 2015) (quoting *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978)). Here, Defendant failed to show any compelling necessity requiring the disclosure or review by the Court of the grand jury proceedings. Defendant does not indicate, with particularity or otherwise, that he has reason to believe that the Indictment or the grand jury proceedings were flawed. He merely states that he wants to review the grand jury instructions and minutes to "determine whether they are factually or legally sufficient," a reason which is not grounds to disturb the "indispensable secrecy" of grand jury proceedings.

Additionally, as a trial has not yet been scheduled in this matter, the Court declines to direct the Government to disclose witness statements and Rule 404(b) material thirty days prior to jury selection. Once a trial has been scheduled, Defendant is directed to renew his request to this Court. However, the Court notes that thirty days is excessive as this case is not especially complex, and courts have found disclosure of such information ten days before trial to be sufficient. *Compare United States v. Kaminski*, No. 97-CR-382(RSP)(DH), 1998 WL 275594, at *4 (N.D.N.Y. May 27, 1998) ("The government acknowledges its obligation under *Brady* and agrees to produce witness statements and evidence bearing on the credibility of its witnesses ten days prior to trial. I cannot compel earlier production of this material."); *United States v. Richardson*, 837 F. Supp. 570, 576 (S.D.N.Y. 1993) (directing the government to disclose Rule 404(b) material within ten days of the trial because ten days was a reasonable amount of time),

*with United States v. Gonzalez*, No. 06-CR-726(WHP), 2008 WL 3914877, at \*6 (S.D.N.Y. Aug. 26, 2008) ("However, in light of the complex nature of this case, the Government shall notify Defendants of its Rule 404(b) evidence thirty days prior to jury selection and trial.").

## III. Suppression

### A. July 2, 2017 statements

Defendant argues that his July 2, 2017 response when asked about whether he was right or left handed should be suppressed because the question was posed with an investigative purpose. A photograph of Defendant holding an item in his right hand in the hallway of the apartment building was in the interrogation documents prepared for the interview, and Defendant alleges that this shows that the question about handedness was intended to elicit an incriminating response.

Statements made during a custodial interrogation are generally inadmissible unless a suspect has first been advised of her rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). In determining whether a suspect was in custody, a court looks at all the surrounding circumstances. *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016). The relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Here, Parties do not dispute that Defendant was in custody. The issue is whether there was an interrogation. Interrogation occurs when a person " 'is subjected to either express questioning or its functional equivalent' and his statements are 'the product of words or actions on the part of the police' that 'were reasonably likely to elicit an incriminating response' " *United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017). The concern addressed in *Miranda* was "to protect a suspect ignorant of his rights from an investigative interrogation intended to elicit information about crimes and the suspect's possible involvement in them." *United States v. Carmona*, 873 F.2d 569, 573 (2d Cir. 1989).

Questions asked to secure the "biographical data necessary to complete booking or

pretrial services" are routine booking questions and are exempt from the *Miranda* requirement

for custodial interrogations. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Examples of

these routine booking questions include "questions about the arrestee's identity, date of birth,

address, telephone number, employment status, [and] family and marital status." *United States v.*

*Choudhry*, 24 F. Supp. 3d 273, 278 (E.D.N.Y. 2014) (citing *United States v. Gotchis,* 803 F.2d

74, 78–79 (2d Cir. 1986)). However, the routine booking questions exception does not

necessarily cover all questions asked during booking or administrative procedures, only those

questions necessary to complete the administrative task. "Without obtaining a waiver of the

suspect's *Miranda* rights, the police may not ask questions, even during booking, that are

designed to elicit incriminatory admissions." *Rosa v. McCray*, 396 F.3d 210, 222 (2d Cir. 2005)

(quoting *Muniz*, 496 U.S. at 602 n.14) (internal quotation mark omitted); *see Acosta v. Artuz,* 575

F.3d 177, 189 (2d Cir. 2009) (An interrogation includes express questioning, as well as "words

or actions on the part of the police (other than those normally attendant to arrest and custody)

that the police should know are reasonably likely to elicit an incriminating response." ).

Here, the booking form does not request information about handedness, and it is unclear

how this information would have been necessary to allow the officer to complete booking or

pretrial services. In the cases where courts held that handedness is a routine booking question, it

appears that the question was included on the booking form. *See Jackson v. Hedgpeth*, No. 08-

CV-8134(RNB), 2009 WL 2060068, at \*16 (C.D. Cal. July 14, 2009); *People v Garcia*, 234

A.D.2d 93, 93 (N.Y. App. Div. 1st Dep't 1996).

The Government contends that the handedness question does not implicate Fifth

Amendment privilege. It analogizes the facts here to those in *Gilbert v. California*, where the

Supreme Court held that taking a handwriting sample in the absence of counsel did not violate the Fifth or Sixth Amendment. 388 U.S. 263, 267 (1967). However, the Court in *Gilbert* distinguished the handwriting exemplar from statements. *Id.* at 266 – 67. The handwriting exemplar itself was "an identifying physical characteristic" outside of the protection of the Fifth Amendment. *Id.* at 267. The Court did not address the content, or statement, in the sample. Here, the material Defendant seeks to suppress is not an "identifying physical characteristic," but a statement. Therefore, *Gilbert* does not apply.

**B.      September 28, 2017 statements**

Defendant also contends that the Court is required by the Fifth and Sixth Amendments to suppress his statements made after he was arrested on the federal charges because he had previously invoked his right to counsel in his state case.

**1.      Sixth Amendment**

Under the Sixth Amendment, defendants are entitled to assistance of counsel for their defense. U.S. Const. amend. VI. This right attaches " 'at the initiation of adversary judicial proceedings,' such as arraignment or filing of an indictment." *United States v. Edwards*, 342 F.3d 168, 182 (2d Cir. 2003) (quoting *United States v. Yousef,* 327 F.3d 56, 140 (2d Cir. 2003) (per curiam)); *see also United States v. Richardson*, 837 F. Supp. 570, 573 (S.D.N.Y. 1993) ("It is well established that the Sixth Amendment right to counsel does not attach until charges have been filed regarding the subject of interrogation.").

The Sixth Amendment right to counsel is offense specific, and it "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Courts in this Circuit have repeatedly held that invoking the right to counsel in a state action is not equal to invoking that right in a federal action on distinct charges. *See, e.g.*, *United States v. Allen*, 169 F. App'x 634, 637 (2d Cir. 2006); *United*

*States v. Ocasio*, No. 10-CR-6096, 2013 WL 3288293, at *2 (W.D.N.Y. June 28, 2013); *United States v. Pulliam*, No. 06-CR-0395(LEK), 2007 WL 1160408, at *3 (N.D.N.Y. Apr. 17, 2007). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

Here, the state offense is distinct from the federal offense. In state court, Defendant was charged with criminal possession of a weapon in the second degree[2] and in federal court, he is charged with violation of 18 U.S.C. § 922(g). Under the federal statute, the Government must show that Defendant is a felon who possessed a firearm or ammunition but is not required to show that the firearm was loaded or that the defendant possessed it outside of his home which are both facts required under the state law. *See* N.Y. Penal Law § 265.03. Likewise, the state is not required to show that a defendant is a felon or that the firearm was transported in interstate commerce, both of which are required under the federal statute. Because the state and federal offenses are distinct, Defendant's invocation of his right to counsel for proceedings related to his state offense did not extend to his federal offense. Moreover, his right to counsel had not yet attached on September 28, 2017; he had only been arrested on the federal charge. Therefore, there is no Sixth Amendment violation.

---

[2] Defendant was also charged with assault in the second degree for causing physical injury by means of a deadly weapon in violation of New York Penal Law § 120.05. The elements the government is required to meet to prove this crime are that the defendant intended to cause physical injury to another person and caused such injury by means of a weapon or dangerous instrument. N.Y. Penal Law § 120.05. None of these elements line up with the elements required to establish a violation of § 922(g) and therefore those two charges are obviously distinct.

## 2.     Fifth Amendment

Once a defendant invokes his right to counsel during a custodial interrogation,

questioning must cease. *United States v. Gonzalez*, 764 F.3d 159, 165 (2d Cir. 2014). However,

a defendant's voluntary incriminating statements made while the defendant is in custody are

admissible. *United States v. Compton*, 428 F.2d 18, 22 (2d Cir. 1970). If a statement is made as

the result of coercion or other improper inducement that overbears a defendant's will, the

statement is not voluntary. *United States v. Ortiz*, No. 06-CR-6076, 2007 WL 925731, at *7

(W.D.N.Y. Mar. 26, 2007) (citing *Hayes v. State of Washington,* 373 U.S. 503, 513-14 (1963)).

Defendant's statements on September 28, 2017 were spontaneous utterances and are

admissible. The arresting agents told Defendant about the charges against him and how it would

"work out well for him if he cooperated." (Def.'s Mot. p. 15.) They also told Defendant,

repeatedly, not to say anything. Then, Defendant made his spontaneous statements. Defendant

argues that his statements were coerced because the agents posited his guilt by informing him of

the charges against him and of the effects of cooperation, which was allegedly a coercive

interrogation tactic. The Court is unpersuaded. Second Circuit case law establishes that simply

telling a defendant about the benefits of cooperation does not render a statement involuntary.

*See United States v. Guarno*, 819 F.2d 28, 31 (2d Cir. 1987) ("[A] confession is not involuntary

merely because the suspect was promised leniency if he cooperated with law enforcement

officials."); *United States v. Lucas*, 338 F. Supp. 3d 139, 162 (W.D.N.Y. 2018) ("Generalized

discussions of cooperation do not render Defendant's statements involuntary or coerced.");

*United States v. Berkovich*, 932 F. Supp. 582, 586 – 87 (S.D.N.Y. 1996).

**IV.     Requests relating to future motions**

Defendant requests that the Court allow him to reserve the right to file additional motions which may become necessary as a result of further proceedings.  For those motions requiring the Court to determine whether there is good cause, the Court declines Defendant's request.  The Court grants Defendant's request to the extent that he has properly reserved his right to file motions if necessary in the future.

Additionally, Defendant requests that he be permitted to join or adopt any relevant motions brought by his co-defendant.  This request is denied.  If Defendant wishes to join or adopt future motions by his co-defendant, Defendant must show that he has standing to bring the motion and that he has a particularized need for the relief requested in the motion.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in part and DENIED in part. It is granted to the extent of reserving Defendant's right to file additional motions if they become necessary. On the issue of whether statements Defendant made related to the handedness question on July 2, 2017 should be suppressed, the Court determines that a hearing is necessary. Accordingly, Parties are directed to appear at their next status conference on May 31, 2019 at 10:30 AM for the purposes of scheduling an evidentiary hearing on this outstanding issue.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 56.

Dated:   May 23, 2019                                        SO ORDERED:
         White Plains, New York

                                                    _____
                                                            NELSON S. ROMÁN
                                                       United States District Judge