USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      -against-

JAMES BOWEN,

                    Defendant.

18-cr-205-2 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Defendant James Bowen ("Defendant") is charged by Superseding Indictment with one count of being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g) subsections (1) and (2). (ECF No. 69.) A trial was scheduled for December 14, 2020, but will be rescheduled due to the COVID-19 pandemic.[1] Before the Court is the Government's motion *in limine* (the "Motion") (ECF No. 81.) and Defendant's cross-motion.[2] (ECF No. 82.)

## BACKGROUND

      The Government alleges the facts in the following two paragraphs. Defendant was previously convicted of two felonies in New York State. (ECF No. 81 at 1.) James Gaines ("Co-Defendant") gave Defendant a gun because Defendant was having an argument with an unspecified person. (*Id.*) Defendant and Co-Defendant later attended a street party during which time Defendant was carrying the gun. (*Id.* at 2.) During the party, Defendant began arguing with a man (the "Victim"). (*Id.*) The Victim began stabbing Defendant. (*Id.*) Defendant fell to the

---

[1] *See* Standing Order M-10-468 (CM) (adjourning all jury trials scheduled for the period beginning December 1, 2020 and ending January 15, 2021) https://www.nysd.uscourts.gov/sites/default/files/2020-11/20mc622%20Standing%20Order.pdf.

[2] Defendant's cross-motion is contained within his opposition papers.

ground, with the Victim on top of Defendant. (*Id*.) Defendant then pushed the Victim back with his leg and reached down to his ankle. (*Id.*) Defendant fired a gun, presumably taken from his ankle, hitting the Victim, "who lurched back as [Defendant] stood up and ran into the street." (*Id*.) Defendant then began gesturing towards the Victim and waving the gun in a threatening manner. (*Id*.) Defendant ran away, still holding the gun. (*Id*.) Co-Defendant then stooped down to the ground where the Victim had been stabbing Defendant and picked up an object. (*Id*.)

Defendant and Co-Defendant fled the scene to an apartment building. (*Id*.) Defendant gave the gun to Co-Defendant. (*Id*.) Co-Defendant entered apartment 3E while Defendant waited outside. (*Id*.) After, Co-Defendant and Defendant walked downstairs, where they were met by law enforcement, who took Defendant to the hospital. (*Id*.) Several hours later, law enforcement officers went to apartment 3E, where they found Co-Defendant, a girlfriend of Co-Defendant ("Girlfriend-1"), and others. (*Id*.) With Girlfriend-1's consent, law enforcement officers searched the apartment and discovered mail addressed to Co-Defendant, two partially loaded guns in a floral bag, and additional ammunition. (*Id*.) One of the guns was bloodstained and analysis later revealed that the blood belonged to Defendant. (*Id*.)

Defendant agrees that he was stabbed by the Victim at a street party. (ECF No. 82 at 2.) Defendant further elaborates that he was stabbed in the chest, stomach, eye, and forearms, and "that if he did not use the firearm, he would have been killed." (*Id*.) Defendant disputes the Government's allegation that he came into possession of the gun prior to the party and instead states that while "fighting for his life, [Defendant] came [into] possession of a gun." (*Id.*)

On August 12, 2019, Defendant was charged by Superseding Indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and (2). (ECF No. 69.) On March 27, 2019, Co-Defendant pleaded guilty to one count of being a felon in

possession of a firearm and aiding and abetting the same, in violation of 18 U.S.C. § 922(g)(1) and (2). On July 26, 2019, the Court sentenced Co-Defendant to 32 months' imprisonment, to be followed by a three-year term of supervised release, and imposed a $100 special assessment.

## STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence ... and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to

balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). While hearsay is generally inadmissible, the Federal Rules of Evidence provide certain exceptions under which it may be admissible. See Fed. R. Evid. 803. Statements that fall under an established hearsay exception are nonetheless inadmissible if they violate the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 56 (2006).

## DISCUSSION

### I.      Necessity Defense

In his opposition brief, Defendant argues that "the Government's motion for the preclusion of the defense of justification/necessity should be denied." (ECF No. 82 at 1.) However, the Government did not move to preclude the defense of justification or necessity. (ECF No. 81.) In its reply, the Government asks the Court to wait until evidence is presented at trial before deciding whether to instruct the jury on a necessity defense. (ECF No. 82 at 3.) To demonstrate necessity, Defendant must show, among other things, that he did not hold onto the gun any longer than necessary and that he did not recklessly or negligently place himself in a situation in which it was probable that he would be forced to resort to criminal conduct. *United States v. White*, 552 F.3d 240, 247 (2d Cir. 2009). The Government intends to introduce evidence at trial that Defendant had the gun in his possession prior to and after the fight and that he recklessly put himself in the situation. (ECF No. 83 at 3.) Therefore, the Government indicates that "depending on how the evidence comes in, the Government may ask the Court, at the charge conference, not to issue a necessity instruction." (*Id.*)

The Court will neither preclude nor permit a defense of justification or necessity at this time. Neither party moved to preclude or permit the defense and the law does not justify preclusion of the defense at this stage. As suggested by the Government, the Court will address whether it will issue a justification or necessity instruction after the presentation of evidence and conclusion of trial at the charge conference.

## II.    Jury Nullification

The Government requests that the Court remind Defendant "that appeals to jury nullification will not be tolerated." (ECF No. 81 at 12.) The Government is concerned that Defendant will try to argue that "even if he broke the law, things ultimately worked out because [Defendant] might have been killed had he not broken the law." (*Id*. at 11.) Defendant did not oppose the Government's request in his opposition. (ECF No. 82.) The Court understands the Government's concerns. While the Court may permit Defendant to invoke a necessity or justification defense at trial, Defendant is directed not to advance arguments outside of what the law permits and aimed at jury nullification. *See United States v. Thomas*, 116 F.3d 606, 616 (2d. Cir. 1997) (finding that "trial courts have the duty to forestall or prevent [jury nullification"); *United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) (prohibiting defendant from advancing arguments aimed at jury nullification).

### III.      Testimony of Shooting Victim

According to the Government, "[n]ot long after the shooting" law enforcement officers responded to the hospital and spoke with the Victim. (ECF No. 81 at 4.) The Victim was agitated and "had been shot in both the lower abdomen and lower left back." (*Id*.) An officer asked the Victim if he had been in the vicinity of the location of the fight. (*Id*.) "[T]he Victim responded, in substance and in part: 'Yea that n*gga shot me.'" (*Id*.) Officers helped the Victim into the hospital, where he said "in substance and in part: 'Yo for real, I got shot! Thank god I had my knife on me, I chewed his face up. I ate his face up.'" (*Id*.) The Government anticipates that the Victim will not testify at trial and seeks to admit the Victim's statements. Defendant did not oppose the Government's request to admit the Victim's statements.

Under the "excited utterance" exception to the hearsay rule, "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" may be admissible for the truth of the matter asserted. Fed. R. Evid. 803(2). The reliability of excited utterances, and therefore the reason for their admissibility, is premised upon the notion that "the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication." *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004). Excited utterances "must rest on personal knowledge" to be admissible (*id*.); however, they "need not be contemporaneous with the startling event...." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998).

Statements that fall under an established hearsay exception are nonetheless inadmissible if they violate the Confrontation Clause. "In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause prevents the admission of evidence based on hearsay exceptions that are 'invoked to admit testimonial statements against the accused in a criminal case.'" *Rivera*

*v. Ercole*, 2007 WL 1988147, *5 (S.D.N.Y. July 6, 2007) (quoting *Crawford*, 541 U.S. at 56).

Statements solicited through interrogations by law enforcement for the sole purpose of

establishing facts of a past crime in order to identify or convict the perpetrator are considered

testimonial. *Davis v. Washington*, 547 U.S. 813, 826 (2006). On the other hand, "at least the

initial interrogation conducted in connection with a 911 call, is ordinarily not designed to

'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police

assistance." *Id.* at 827.

      The statements made by the Victim as he entered the hospital qualify as excited

utterances. "Only minutes had passed between the shooting and the Victim's statements to law

enforcement." (ECF No. 81 at 5.) The Victim had two gunshot wounds and had just participated

in a violent attack. (*Id*.) It is clear to the Court that the Victim was still under the stress of the

incident. Further, admission of the Victim's statements does not violate the Confrontation

Clause. Law enforcement did not interrogate the Victim about the perpetrator of the crime and

instead asked whether the Victim had been in the vicinity of the street fight. Further, law

enforcement's interaction with the Victim was limited to helping the Victim and quickly

addressing the emergency, not identifying and convicting Defendant. As such, provided the

Government can lay the appropriate foundation and establish the facts asserted in its brief, the

Victim's statements are admissible under the excited utterance exception to the hearsay rule. See

Fed. Rul Evid. § 803(2).

IV.     **Co-Defendant's Confession to his Girlfriend**

The Government alleges that shortly after the shooting, Co-Defendant called his other girlfriend ("Girlfriend-2") and told her: (1) that Co-Defendant's friend had gone to Girlfriend-1's apartment and asked Co-Defendant for a gun because the friend was having an argument with another person, (2) that Co-Defendant gave his friend a gun and Co-Defendant and his friend left the apartment with two guns, (3) that Co-Defendant and his friend were involved in a shooting whereby the friend shot himself in the foot and shot another person, and (4) that Co-Defendant and his friend returned to Girlfriend-1's apartment following the shooting, where they left the two guns. (ECF No. 83 at 4.) According to the Defense, through counsel, Co-Defendant "vehemently denied that he made the alleged statements." (ECF No. 82 at 5.) The Government seeks to admit these statements pursuant to Rule 804(b)(3).[3]

Federal Rules of Evidence Rule 804(b)(3) provides a hearsay exception for statements made against the declarant's interest. In order for statements to be admissible to "inculpate the accused" pursuant to Rule 804(b)(3), the proponent must show "(1) that the declarant is unavailable as a witness, (2) that the statement is sufficiently reliable to warrant an inference that a reasonable [person in the declarant's position] would not have made the statement unless [he or she] believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement." *United States v. Wexler*, 522 F.3d 194, 202 (2d. Cir. 2008) (quoting *United States v. Katsougrakis*, 715 F.2d 769, 775 (2d. Cir. 1983)).

---

[3] Rule 801(d)(2)(A) provides that statements made by a "party in an individual or representative capacity" are not hearsay. The Government cites to Rule 801(d)(2)(A), but does not rely on it in its analysis or make any argument as to why Rule 801(d)(2)(A) should apply. As such, the Court will not analyze the admissibility of the statements pursuant to Rule 801(d)(2)(A).

A.      *Declarant's Unavailability*

The Government indicates that the declarant (Co-Defendant) is unavailable because he will invoke his Fifth Amendment right against self-incrimination if called to testify. (ECF No. 81 at 9.) "On November 11, 2020, the Government sent [Co-Defendant's] counsel a trial subpoena . . . and asked counsel to confirm in writing whether [Co-Defendant] would invoke his Fifth Amendment right against self-incrimination if called at trial." (ECF No. 85 at 1.) "On November 19, 2020, [Co-Defendant's] counsel confirmed in writing that [Co-Defendant] would invoke the Fifth Amendment if called to testify at trial." (*Id.*)

The Government argues that "unavailability is not limited to physical unavailability; rather, '[w]hen a witness properly invokes his Fifth Amendment right against self-incrimination, he is unavailable for the purposes of Rule 804(a).'" (ECF No. 83 at 5 (quoting *United States v. Miller*, 954 F.3d 551, 561 (2d Cir. 2020)).

The Government argues that it is appropriate for Co-Defendant to invoke the Fifth Amendment because, although Co-Defendant was already convicted of violating 18 U.S.C. § 922(g)(1), he is still potentially liable for other crimes including: (1) disposal of a firearm without first notifying the state police, in violation of NYPL § 265.10(7), (2) tampering with physical evidence by hiding guns he knew had been involved in a shooting, in violation of NYPL § 215.40(2), (3) aiding and abetting Defendant's possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and (2), (4) aiding and abetting Defendant's criminal possession of a weapon in the second degree, in violation of NYPL § 265.03(1)(b), and (5) reckless endangerment, in violation of NYPL §§ 120.20 and 120.25. (ECF No. 85 at 2.) The Government argues that "[w]hether the Westchester District Attorney's Office currently intends to prosecute

[Co-Defendant] for any of these crimes is unknown and of no moment; there remains a 'realistic risk' that it could do so, and that ends the inquiry." (*Id.*)

Defendant argues that Co-Defendant is available, as he is in Bureau of Prisons custody. He therefore argues the Government's motion should be denied as moot. (ECF No. 82 at 5.) Defendant also argues that the potential criminal charges identified by the Government are "either time barred or barred by double jeopardy." (ECF No. 86 at 2.) According to Defendant, Co-Defendant was initially "charged by the Westchester County District Attorney's Office with violations of Criminal Procedure Law Criminal Possession of a Weapon" and those charges were dismissed three months later, "it is believed with prejudice." (*Id.*) Defendant argues that under New York Criminal Procedure Law §40.40(2), New York's double jeopardy law, Co-Defendant cannot now be charged with any state crimes that arose out of the same criminal transaction as the original charge. Defendant further argues that some of the alleged potential criminal exposure is time barred. Defendant also requests that the Court grant immunity to Co-Defendant. Finally, Defendant argues that Fifth Amendment immunity is not a blanket determination, but rather is particularized on a question-by-question basis and that Court should not grant blanket immunity to Co-Defendant.

In response, the Government argues that the potential criminal exposure is not barred by double jeopardy or a statute of limitations. The Government also argues that although there is no blanket Fifth Amendment immunity, the Court can make a particularized inquiry without haling Co-Defendant into Court. *See United States v. Miller*, 954 F.3d 551, n.34 (2d Cir. 2020) (citing *United States v. Williams*, 927 F.3d 95, 99 (2d Cir. 1991).[4] The Government argues that the

---

[4] The Government claims that there is a clear rule that a Fifth Amendment determination can be made without haling a witness into court on the basis of the witness's counsel's declaration that the witness will invoke the Fifth Amendment. However, the two cases the Government cites are Second Circuit cases finding that doing so was as most harmless error. Regardless, it is clear that the decision to require a witness to invoke the Fifth Amendment in court is left to the discretion of the Court.

scope of testimony that Co-Defendant could make without implicating the Fifth Amendment includes "his name, age, and other such matters without fear of further prosecution. However, absent testimony about Gaines giving Bowen a gun to use in a confrontation and then hiding it, this would not be relevant." (ECF No. 89 at 9.)

A declarant is considered unavailable when he or she properly invokes his or her Fifth Amendment right against self-incrimination. *Miller*, 954 F.3d at 561 (citing *United States v. Jackson*, 335 F.3d 170, 177 (2d Cir. 2003)); *United States v. Lang*, 589 F.2d 92, 95 (2d Cir. 1979). Rather than "simply accept [a defendant's] blanket assertion of the [F]ifth [A]mendment privilege in respect to all questions asked of him," a district court must "undertake a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution as to each of the posed questions." *United States v. Zappola*, 646 F.2d 48, 53 (2d Cir. 1981). As such, the Court finds that it would be inappropriate for the Court to grant Co-Defendant a blanket Fifth Amendment privilege in advance of trial. Co-Defendant has already plead guilty to and been sentenced for possession of two firearms on the night of the incident, including one firearm that was allegedly used in the shooting and covered in Defendant's blood. While the Court is aware that the Fifth Amendment may still be implicated after a conviction and sentencing, in this instance it would be pure speculation to rule that there is no relevant information Co-Defendant can provide without risking further incrimination. Further, Co-Defendant "vehemently denies" making the alleged statements; it is entirely possible Co-Defendant's testimony regarding what transpired is different from the statements he allegedly told Girlfriend-2 and would not implicate Co-Defendant. Without knowing what specific questions will be asked at trial and what specific concerns Co-Defendant has, the Court cannot determine whether the Fifth Amendment privilege properly applies. Additionally, although the

Second Circuit may permit district courts to rule on Fifth Amendment privilege without haling a witness to Court, it does not require them to do so. *See, e.g.*, *United States v. Brunshtein*, 2001 WL 1524469, at * 1-2 (S.D.N.Y. Nov. 30 2001). *See also Miller*, 954 F.3d at 561 ("A rule regarding privilege '*can* be made . . . with *or without* the witness being haled into court.") (emphasis added) (quoting *Williams*, 927 F.2d at 99). As such, in this instance, it is the Court's determination that the Government's motion is premature.

### V.    Cross-examination of Girlfriend-2

#### A.    *Prior Convictions*

The Government moves to preclude cross-examination of Girlfriend-2 regarding her prior misdemeanor convictions. (ECF No. 81 at 12.) These convictions include petit larceny in 2017, prostitution in 2005, criminal possession of a controlled substance in the seventh degree in 2004, attempted assault in the third degree in 2002, criminal possession of a controlled substance in the seventh degree in 2002, and attempted criminal possession of a weapon in 2000. (*Id*. at 13.) Defendant argues that the 2017 petit larceny charge should be admitted because it is "a theft crime and bears on the witness[']s truthfulness."[5] (ECF No. 82 at 9.)

Under Rule 609 of the Federal Rules of Evidence, evidence of a witness's prior convictions can be admitted for impeachment purposes, subject to certain limitations. Fed. R. Evid. 609. "[E]vidence of convictions for crimes involving dishonesty or false statement, whether felonies or misdemeanors, must be admitted under Rule 609(a)(2) as being *per se* probative of credibility." *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005) (internal quotation marks omitted) (emphasis in original). Where a crime does not automatically implicate the use of dishonesty or false statements, "the proffering party must demonstrate 'that [the]

---

[5] Defendant does not argue that Girlfriend-2's other crimes are admissible pursuant to Rule 609. Girlfriend-2's other crimes are misdemeanors that do not involve a dishonest act or false statement. Further, it has been more than ten years since Girlfriend-2 has been convicted and/or released from confinement for these crimes. As such, the Court finds they are inadmissible under Rule 609.

particular prior conviction rested on facts warranting the dishonesty or false statement description.'" *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977) (barring admission of narcotics importation conviction under Rule 609(a)(2) because government failed to present specific facts that crime involved dishonesty or false statement)).

"With respect to convictions for larceny, [the Second Circuit has held] that 'we will look beyond the elements of the offense to determine whether the conviction rested upon facts establishing dishonesty or false statement.'" *Estrada*, 430 F.3d at 614 (quoting *United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998)). Further, crimes of stealth, including petit larceny, do not fall within Rule 609(a)'s purview. *United States v. Hayes*, 553 F.2d 824 (2d Cir. 1977).

Because the Second Circuit considers petit larceny to be a "crime of stealth" and because Defendant does not suggest that Girlfriend-2's petit larceny conviction involved the use of dishonesty or false statements, the Court grants the Government's motion to preclude cross-examination of Girlfriend-2 regarding this crime.

    B.    *Bail Hearing Testimony*

In his opposition brief, Defendant moves for permission to cross-examine Girlfriend-2 regarding her "untruthful prior sworn testimony at [Co-Defendant's] bail hearing regarding her criminal convictions." (ECF 82 at 9-10.) The bail hearing script indicates that, when asked whether she had any arrests and convictions prior to 2017, Girlfriend-2 responded "Yes 9/'14 yes." (*Id*.) However, Girlfriend-2 had no convictions in 2009 or 2014 and instead had convictions in 2005, 2004, 2002 (two convictions), and 2000. (*Id*.)

The Government argues that the hearing transcript contains a typographical error. (ECF No. 83 at 12.) It notes that "a court reporter takes down words as spoken, [so] this would mean

that, when asked if she had ever been arrested and convicted of a crime before 2017, [Girlfriend-2] answered 'nine slash apostrophe fourteen, yes.'" (*Id*.) The Government also points out that Girlfriend-2 was then asked "So, years ago, you had been arrested and convicted of a crime?" and she responded "Yes." (*Id*. at 11.) The Government argues that admission of this error would be improper under Rule 403, because "its probative value is substantially outweighed by a danger of one or more of the following: undue prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (*Id.* at 13 (quoting Fed. R. Evid. 403).)

The Court agrees with the Government. Girlfriend-2 admitted to having been arrested and convicted of crimes prior to 2017. It seems likely that this discrepancy is the result of a transcription error rather than Girlfriend-2's decision to lie and say her convictions were in 2009 and 2014 instead of 2000, 2002, 2004, and 2005. It is unclear what benefit Girlfriend-2 would have gotten from lying about the years of her convictions. Further, even if Girlfriend-2 said "9/'14 yes," it is unclear what "9/'14" means. Finally, allowing Defendant to cross-examine Girlfriend-2 about this alleged discrepancy would confuse and mislead the jury and offer little or no probative value. As such, Defendant's request to cross-examine Girlfriend-2 regarding her testimony at the bail hearing is denied.

C.    *Employment Application*

In his opposition brief, Defendant moves for permission to cross-examine Girlfriend-2 regarding her job application to work with Child Protective Services, her current employer. (ECF No. 82 at 10.) Defendant suspects Girlfriend-2 lied on her application because he doubts Child Protective Services would hire an individual with a criminal history of theft, drugs, weapons, assault, and prostitution to work with children. (*Id*.)

The Government argues that there is no good-faith basis to ask Girlfriend-2 whether she lied on her employment application. (ECF No. 83 at 14.) The Government notes that Girlfriend-2 "did *not* testify that she works with children; rather, she testified that she does 'secretary work' in the 'motor pool' for 'CPS' in Yonkers." (*Id*.) The Government asserts that this is not the type of job "that typically requires an applicant to swear that she has no prior misdemeanors, as it does not involve work with children." (*Id*.) Further, the Government notes that CPS is a government agency and can run its own background check on employees if it wants to do so. (*Id*.) Finally, the Government argues that permitting this line of cross-examination would cause Rule 609 to swallow itself because "every attorney could ask every witness about their prior criminal history and the job applications the filled out in their life." (*Id.*)

The Court agrees. Although the Court can conceive of instances where it would be appropriate to question a witness regarding truthfulness in an employment application, in this instance where the witness does not work with children, her criminal history consists only of misdemeanors, and all but one of her misdemeanor convictions occurred over a decade ago, there is no good-faith basis for such questioning. *See United States v. Katsougrakis*, 715 F.2d 769, 779 (2d Cir. 1983) ("Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he [or she] must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts.").

VI.     **Cross-examination of Law Enforcement Witnesses**

The Government moves to preclude cross-examination of law enforcement witnesses

regarding civil lawsuits and civil complaints. (ECF No. 81 at 13.) The Government indicates that

all known civil lawsuits were disclosed to Defendant. (*Id.*) It also notes that none of the civilian

complaints relate to this case and all were found to be unsubstantiated. (*Id*.)

Defendant indicates he does not intend to cross-examine law enforcement witnesses

regarding civil lawsuits that were dismissed or are pending or regarding vehicle or traffic

infractions. (ECF No. 82 at 11.) As such, the Court will not address those scenarios. However,

Defendant seeks to cross-examine two law enforcement officers regarding a DWI conviction and

driving with a suspended license. (*Id.*) Defendant also seeks to cross-examine Detective Drain

regarding his "prior adverse credibility determination" by the Westchester District Attorney.

(*Id*.)

A.      *Moving Violations*

Defendant seeks to question Yonkers Police Officer Shawn Almonte regarding an "arrest

and conviction for driving with a suspended license approximately two decades ago when he was

20 or 21 years old" and Detective Drain ("Drain") regarding an "arrest and conviction for

driving while intoxicated in Washington State approximately two decades ago, before he was a

police officer." (ECF No. 83 at 15.)

Rule 609(b) provides that, "if more than 10 years have passed since [a] witness's

conviction or release from confinement for it, whichever is later," evidence of the conviction is

admissible only if "its probative value, supported by specific facts and circumstances,

substantially outweighs its prejudicial effect." FRE Rule 609(b)(1). Defendant offers no

evidence that the law enforcement officers' prior convictions are probative to this matter and

cites to no case law to support his request. The officers' convictions occurred roughly two

decades ago and in circumstances unrelated to this case. Further, the convictions do not involve

dishonest acts or false statements, meaning their impeachment value is low. As such, the Court

will not permit Defendant to cross-examine the officers regarding these convictions.

       B.     *Prior Adverse Credibility Finding*

In his opposition brief, Defendant moves for permission to cross-examine Drain

regarding statements made by a Westchester County Assistant District Attorney ("ADA") during

a plea hearing regarding Drain's credibility. (ECF No. 82 at 11.) During the hearing, the ADA

indicated that "the office finds unpersuasive and is deeply troubled by the testimonies of Police

Officers Hughes, Egan, Drain and Quirk." (*Id.*)

The Government argues that the Court should preclude this cross-examination. First, it

argues that any testimony regarding the ADA's determination would be "rank hearsay, and

therefore inadmissible." (ECF No. 83 at 18.) The Government also argues that the ADA's

remarks do not qualify as judicial adverse credibility findings, but even if they did, the Second

Circuit has not explicitly found whether such findings would constitute inadmissible hearsay.

The statements at issue were made by an ADA during a plea proceeding. As such, the

Court finds that the do not qualify as judicial adverse credibility findings. Therefore, the

statements constitute mere opinion hearsay.

Second, the Government argues that, "even if the ADA were to testify, he would not be

allowed to testify about the subject" because his opinion would be lay opinion testimony, which

is only admissible to help determine a fact in issue. (ECF No. 83 at 19.) The Government argues

that "[n]othing in the ADA's statement discusses Drain's character for truthfulness or

untruthfulness." (*Id.*) The Court agrees that the specific statements the ADA made during the

plea hearing are inadmissible as lay opinion testimony.

Finally, the Government argues that, even if Defendant "were permitted to ask Detective Drain if he lied in a proceeding six years ago," the Defendant would be "stuck with Detective Drain's answer and could not ask about the ADA's statements" because Rule 608(b) bars introduction of extrinsic evidence of specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility unless that conduct was the subject of a criminal conviction. (ECF No. 83 at 19.) The Government also argues that Defendant should not be permitted to ask Drain this question because "under Rule 403 … it would be confusing and not terribly probative." (*Id*.) While the Court acknowledges that Defendant is unable to rely on extrinsic evidence of specific instances of conduct–including the ADA's statements–to attack Drain's credibility, it finds that, under the circumstances, cross-examining Drain as to whether he lied in a prior proceeding would be probative of his truthfulness. While such a question may be confusing to the jury, its probative value is not substantially outweighed by this confusion. FRE Rule 403. Drain's credibility is an important factor in evaluating his testimony. As such, Defendant is permitted to ask Drain whether he lied in a prior proceeding.

In sum, the ADA's prior statements regarding Drain's credibility are inadmissible. Defendant may, however, ask Drain whether he lied in a prior proceeding.

## CONCLUSION

For the foregoing reasons, the Court will determine whether to issue a necessity instruction at the charge conference. Defendant is instructed not to advance arguments directed at jury nullification. The Victim's statements made shortly after the shooting qualify as excited utterances and are admissible provided the moving party lays the necessary foundation at trial. The Court declines to accept Co-Defendant's blanket pretrial invocation of the Fifth Amendment privilege and will decide on a question-by-question basis whether the privilege applies at trial. Defendant is precluded from cross-examining Girlfriend-2 regarding her prior convictions, her bail hearing testimony regarding her convictions, and her truthfulness in her employment application. Defendant is also precluded from cross-examining law enforcement regarding moving violations and specific statements made by a Westchester County ADA regarding Drain's credibility. However, Defendant may question Drain as to whether he lied in a prior proceeding.

The Clerk of the Court is kindly directed to terminate the pending motions at ECF Nos. 81 and 85.

Dated:    January 5, 2021                                SO ORDERED:

        White Plains, New York

                                    _____

                                    NELSON S. ROMÁN

                                    United States District Judge