UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/03/2021
```

UNITED STATES OF AMERICA,

    -against-

JAMES BOWEN,

                Defendant.

18-CR-00205-2 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Defendant James Bowen ("Defendant") was charged by Superseding Indictment with one count of being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g) subsections (1) and (2).  (ECF No. 69.)  On May 14, 2021, following a jury trial, Defendant was found guilty.  (Gov't Br. In Opposition to Def.'s Mot. ("Gov't Opp."), ECF No. 118, at 1.)  Before the Court is Defendant's post-trial motion for an acquittal, or in the alternative,  a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. (Def. Brief in Support of His Motion to Dismiss ("Def.'s Mot."), ECF Nos. 115 & 116.)[1] For the following reasons, Defendant's motion is DENIED in its entirety.

## LEGAL STANDARDS

### I.    Rule 29 Motion

      Rule 29 provides that after the close of the Government's evidence in a criminal trial, the Court "on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  Specifically, a court "will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes

---

[1] Defendant appears to have filed the same memorandum twice.  (ECF Nos. 115 & 116.)

that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003).

This standard imposes a heavy burden on a defendant.  Indeed, a court must affirm a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Put differently, a court will grant a motion for an acquittal only if "the evidence that the defendant committed the crime alleged [was] 'nonexistent or [] meager.'"  *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

When assessing the sufficiency of the evidence, the Court must "view the evidence in the light most favorable to the government and construe all possible inferences in its favor."  *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986).  The Court must consider direct evidence, as well as any circumstantial evidence proffered.  *See United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995) ("[T]he jury's verdict may be based entirely on circumstantial evidence.").  In so doing, the Court must view the evidence in its totality, not in isolation, and the government is not required to negate every possible theory of a defendant's innocence.  *See United States v. Rosenthal*, 9 F.3d 1016, 1024 (2d Cir.1993).  Most importantly, the Court must be mindful not to "usurp[ ] the role of the jury," *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (citing *Jackson*, 335 F.3d at 180), or "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury."  *Id*. (citing *Guadagna*, 183 F.3d at 129) (internal quotations omitted).

## II.    Rule 33 Motion

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  Courts typically grant Rule 33 motions "only in

extraordinary circumstances." *United States v. Moore*, 54 F.3d 92, 99 (2d Cir. 1995); *accord United States v. Torres*, 128 F.3d 38, 48 (2d Cir. 1997). "The defendant bears the burden of proving that [he or she] is entitled to a new trial." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

While Rule 33 "confers broad discretion upon a trial court," the Court's granting of the motion must be predicated upon the need to avoid a "perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). The Court must "examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). The Court must also "defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. LeRoy*, 687 F.2d 610, 616 (2d Cir. 1982). The "ultimate test" for the Court's consideration is "whether letting a guilty verdict stand would be a manifest injustice" such that "an innocent person may have been convicted." *Ferguson*, 246 F.3d at 134 (citation and quotation marks omitted); *see also United States v. Aponte-Vega*, 230 F.3d 522, 525 (2d Cir. 2000) (per curiam) (explaining that new trial "is merited only if . . . the evidence is such that it would probably lead to an acquittal" (internal quotations omitted)).

## DISCUSSION

Defendant raises two bases for acquittal, or alternatively, a new trial. First, Defendant argues that the curative instructions provided by the Court did not undo the substantial prejudice caused by Detective Sokolik's and Brandi Clark's testimony. (Def.'s Mot. 5-13.) Second, Defendant argues that the evidence is insufficient for a finding that Defendant had a firearm in his possession. (*Id*. at 13-17.)

Having reviewed the evidence in the light most favorable to the Government, and upon consideration of the totality of the evidence, the Court concludes that the prejudicial testimony was cured by the provided jury instructions, and the Government has proffered sufficient evidence for each of the requisite elements of Count One.  Accordingly, a rational trier of fact could determine beyond a reasonable doubt that the Defendant was a felon in possession of a firearm.

### I.     Prejudicial Testimony

The Court will "presume that juries follow limiting instructions" unless "there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." *United States v. Becker*, 502 F.3d 122, 130 (2d Cir. 2007) (quoting *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994)).  Generally, this presumption is "inappropriate" where the jury is asked "to perform mental acrobatics." *Id*. (internal quotations omitted).

Defendant maintains that the testimony of two witnesses caused him substantial prejudice, and that the Court's curative instructions did not undo this prejudice.  (Def.'s Mot. at 5.)  First, Detective Sokolik testified that the black object in Defendant's hand seen on videotape was a firearm.  (*Id*. at 7-8.)  Defendant alleges this was improper expert testimony provided by a lay witness.  (*Id*. at 7.)  Second, Brandi Clark, an expert in gunshot residue, testified about "contact" and "near contact" gunshots, which were not discussed in her expert report or findings.  (*Id*. at 10.)  In response, the Government argues that there is no evidence that the jury did not or could not follow the curative instructions striking the problematic testimony, or that the testimony was "devastating to the defense."  (Gov't Opp.at 22-23, 25.)  For the reasons discussed below, the Court agrees with the Government as to both witnesses.

     *a.   Detective Sokolik*

4

Detective Sokolik testified for the prosecution as the lead detective on the Defendant's case. (Def.'s Mot. at 7.) Part of Detective Sokolik's testimony included discussion of a videotape that showed the Defendant. (Gov't Opp. at 15.) Before Detective Sokolik testified, the Court ruled that the Government could ask "whether or not there appear[ed] to be an object in the individual in the video's hand, but that [was] the extent of the questioning. [The Government could] ask whether or not the individual depicted in the photo is holding an object." (Trial Tr. at 101:19-22.) Pursuant to this ruling, the Government instructed Detective Sokolik that he was not permitted to offer his opinion that the Defendant was holding a firearm. (Gov't Opp. at 15.) During his direct examination, Detective Sokolik was asked about the object in Defendant's hand:

> Q:     All right. And Detective Sokolik, what, if anything, do you see in Mr. Bowen's right hand?
> A:     Play it again?
> Q:     Yes.
>        (videotape played)
> A:     It appears to me he is holding a firearm.
> Mr. Burke:     Objection, Your Honor.
> Court:  Objection sustained.

(Trial Tr. at 166:3-11). Defendant argues that this testimony involved the ultimate issue in the case, the possession of a firearm, and improperly provided the jury with expert testimony based on information Detective Sokolik obtained during the investigation. (Def.'s Mot. at 7.)

Immediately after this testimony, the Court offered a limiting instruction: "Ladies and gentlemen of the jury, you are to disregard the response the detective gave. The last question is to be stricken from your mind. All right? Thank you." (Trial Tr. at 166:14-16.) Additionally, at the close of trial, the Court included a similar instruction: "Testimony that has been stricken or excluded by me is not evidence and may not be considered by you in rendering your verdict." (Trial Tr. at 875:18-20.) Defendant argues that the prejudice of the Detective's answer could not be undone by these curative instructions, as Detective Sokolik was testifying based on information

gathered as the lead detective on the case, and the Government's case relied on circumstantial evidence.  (Def.'s Mot. at 7.)

Here, Defendant has failed to rebut the presumption that the jury followed the Court's instruction.  While regrettable, Detective Sokolik's mistake spanned only one line of testimony, and the Court immediately sustained Defendant's objection and issued a limiting instruction.  *See Glisson v. Mantello* 287 F. Supp. 2d 414, 439 (S.D.N.Y. 2003) (holding the defendant could not overcome the presumption where the prejudicial testimony "consisted of one short sentence" and "the trial court gave a prompt curative instruction requiring the jury to disregard" the testimony). Defendant has not shown that the jury was unable to follow the Court's instruction.[2]  *United States v. George*, No. 11-CR-250 (DLI), 2012 WL 2564373, at *16 (E.D.N.Y. June 29, 2012) (holding curative instructions were sufficient where the Government referenced stricken testimony during summation and the Court provided curative instructions immediately after as well as during the final jury charge); *Manganiello v. Agostini*, No. 07 Civ. 3644(HB), 2008 WL 5159776, at *10 (S.D.N.Y. Dec. 9, 2008) (holding limiting instructions were sufficient where "the record contains no indication that the jury was unable to follow the limiting instruction").

Further, the testimony was not "devastating" to the defense, as there was more than sufficient evidence (discussed below) from which the jury could find that the Defendant was in possession of a firearm.  In a similar case, *United States v. Mussaleen,* the defendant argued that he was unfairly prejudiced following testimony from a witness that he was carrying a firearm.  35 F.3d 692, 693 (2d Cir. 1994).  The court had previously instructed the witness to make no reference

---

[2] Defendant's argument that the Court's instruction to "disregard" Detective Sokolik's testimony was insufficient is unsupportable.  *See, e.g.*, *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) ("We normally presume that a jury will follow an instruction to *disregard* inadmissible evidence inadvertently presented to it[.]") (emphasis added); *Glisson*, 287 F. Supp. 2d at 439 ("the trial court gave a prompt curative instruction requiring the jury to *disregard*" the testimony) (emphasis added).

to the defendant's possession of a firearm during her testimony, however the witness mistakenly mentioned it and the defendant moved for a mistrial. *Id*. at 694–95. The court denied the motion and gave the jury a curative instruction to disregard the witness's answer. *Id*. at 695. On appeal, the Second Circuit held that this statement did not violate the defendant's right to a fair trial, as the evidence of the defendant's guilt was "solid," the Court provided "appropriate curative instructions" following the problematic testimony, and the comment was not so "devastating" to overcome the assumption that the jury would follow the Court's instruction. *Id*.[3]

Defendant also seems to suggest that the Government bolstered Detective Sokolik's testimony by questioning him "at great length about his background and experience as a detective as well as his role as lead detective on [Defendant's] case." (Def.'s Mot. at 7.) Defendant offers no support for his claim that a jury is less likely to follow a curative instruction where the witness is a member of law enforcement. Further, the Second Circuit has endorsed the use of a curative instruction even where improper testimony was elicited from a law enforcement officer. *See, e.g., United States v. Elfgeeh*, 515 F.3d 100, 114; 127 (2d Cir. 2008); *Mussaleen*, 35 F.3d at 694.

Lastly, Defendant points to the Government's repeated questions to Detective Sokolik about the object in the videotape as an attempt to "compound the prejudice." (Def.'s Mot. at 9.) Following Detective Sokolik's stricken response, the Government asked Detective Sokolik three additional times about the object in Defendant's hand. (Trial Tr. at 165:6-12; 166:18-20; 168:2-4.) However, each question was asked after the jury viewed either a new section of the video clip or a new still image of the Defendant. (Trial Tr. at 165:3-4; 165:13-17; 166:22–167:18.) The

---

[3] The cases Defendant cites to are inapposite. *United States v. Grinage*, 390 F.3d 746, 749–51 (2d Cir. 2004), involved a harmless error analysis after a case agent provided expert testimony and no limiting instructions were provided. *United States v. Garcia*, 752, F.3d 382, 392–95 (4th Cir. 2014), found that the conflation between a witness's fact and expert opinion testimony was prejudicial, even though prior to the witness taking the stand the Court cautioned the jury about the two kinds of testimony.

Government was merely providing the jury with a timeline shown through the evidence. The fact that the same question that initially produced Detective Sokolik's prejudicial testimony was asked again after the curative instruction and with the modifier "without being specific" cannot be seen as wrongful conduct by the Government.

In sum, the Court finds that Detective Sokolik's testimony was not unduly prejudicial.

*b. Brandi Clark*

Brandi Clark testified on behalf of the prosecution as an expert in gunshot residue ("GSR"). (Def.s Mot. at 10.) During her redirect examination, Clark discussed "contact" and "near contact" discharges:

Q:    Ms. Clark, are you familiar—in the context of firearms and GSR, are you familiar with the term "contact"?
A:    Yes, I am.
Q:    Are you familiar with the term "near contact"?
A:    Yes.
Q:    Could you describe what those terms mean to you.
A:    As described in our laboratory, contact is where the muzzle of the firearm would be in direct hard contact with the item. Near contact is anything from an inch or less.
Q:    And what, if anything, is indicative of contact or near contact in your analysis?
A:    Normally we see ripping and tearing of the fabric, a large amount of vaporous lead can be observed, you will see some particulate nitrites maybe around the edges of the hole, but not very spread out as you would see with larger distance. You will also see some—potentially some materials blow through to the underside of the garment.
Q:    What, if anything, does the melting of fibers tell you about whether something has had contact or near contact with a firearm?
A:    That is one of the indications, also, that it was a close-range shot, near contact or contact.
Q:    Are your findings consistent with a firearm having contact or near contact with the sock?
      …
A:    Some of my findings were indicative of that, but not everything that I saw indicated that.
Q:    I'm sorry, could you say that again?
A:    Some of my findings, the melting of the fibers, indicated that, yes.

(Trial Tr. at 457:11–458:20.)  During recross examination, Clark stated that a discussion of close contact or near contact gunshots was not in her expert report, and Defendant moved to strike this testimony as "unduly prejudicial."  (Trial Tr. at 459:2–460:14; 466:14–467:7.)  The Court reserved judgment, and later provided a curative instruction to the jury:

> Before we proceed, however, I do want to give you an instruction that you must follow, and that is that during the testimony of the last witness, Brandi Clark, with the Westchester Lab, forensic lab, she testified concerning two concepts; one of near contact and contact.  I'm directing you that any testimony that she gave regarding the concepts of near contact and contact as it relates to any analysis that she performed is stricken from the record and now must be stricken from your minds and from your deliberations.  Okay?  It is stricken from the record and may not be considered by you at all during your deliberations.

(Trial Tr. at 531:13-25.)

Defendant again fails to show that the jury was unable to follow the Court's curative instruction.  The Court's instruction was clear and specific, and came shortly after her testimony that morning.  (Trial Tr. 531:11-25); s*ee Dillon v. Smith*, 07-CV-10728, 2015 WL 13745783, at *4–5; 9–10 (S.D.N.Y. Dec. 22, 2015) (holding curative instructions to the jury were sufficient where they were provided the day after the testimony was given).

Further, Defendant cannot show that Clark's testimony was devastating to the defense.  Clark's stricken testimony only occurred during her redirect examination.  She had already explained her expert report, findings, and other evidence to the jury during her direct and cross-examination, which established that her findings were consistent with a firearm having gone off in Defendant's sock.  (Trial Tr. at 442:12–43:12.)  Clark's short discussion of contact and near contact discharges was not "devastating" to Defendant's case or his justification defense.  *United States v. Van Hise*, No. (S4) 12 Cr. 847(PGG), 2014 WL 956291, at *6 (S.D.N.Y. Mar. 11, 2014) (holding testimony that a video was

recovered from the defendant's property was not "devastating" where there was "abundant evidence in the record" concerning the defendant's interest in the subject of the video).

In sum, the Court finds that Clark's testimony was not unduly prejudicial.

## II.   Sufficiency of the Evidence

Defendant maintains that the evidence establishing actual or constructive possession of the firearm was insufficient to sustain a conviction because (1) the Government failed to offer ballistic evidence or fingerprint analysis, (2) the Government exclusively relied on an excited utterance by the gunshot victim, (3) the Westchester County Division of Laboratories provided incomplete testing, and (4) Clark's testimony was inconsistent.  (Def.'s Mot. at 16-17.)   In response, the Government argues (1) Defendant does not carry his heavy burden of showing that no rational trier of fact could have found beyond a reasonable doubt that he possessed a firearm, (2) the Government is not required to use specific kinds of evidence, (3) the Government can rely on circumstantial evidence to prove its case, and (4) the excited utterance was direct evidence of Defendant's possession of the weapon.  (Gov't Opp. at 27-31.)

Having viewed the evidence in totality and in the light most favorable to the Government, the Court finds that there was sufficient evidence for the jury's verdict.  At trial, the Government presented evidence to the jury to prove Defendant's possession of the firearm, including (1) Defendant's blood and DNA on a recovered weapon (Trial Tr. at 364:7–369:21); (2) the gunshot residue analysis suggesting a firearm was fired from inside Defendant's sock (Trial Tr. at 427:15–443:12); (3) medical records showing Defendant had "an entry and exit wound traversely across the left ankle soft tissue posterior to the ankle joint, anterior to the Achilles tendon with burn marks on the medical aspects of the wound" (Trial Tr. at 829:18-24); (4) Defendant's statement that he shot the firearm (Trial Tr. at 741:4-6); (5) video surveillance showing the events of July 1, 2017

in which Defendant was holding a black object (Trial Tr. at 165:6-12; 733:16–761:12); (6) the firearms found in the apartment (Trial Tr. at 182:5–183:24; 618:8–622:18); and (7) the gunshot victim's statement that the person he "chewed up" shot him (Trial Tr. at 546:18-22; 548:22–549:24.)   Overall, a jury considering this testimony and evidence could have reasonably concluded that Defendant had possession of a firearm.

Defendant's contention that the Government's use of circumstantial evidence and its failure to offer specific kinds of evidence and laboratory testing is inapposite.  "No particular type of evidence is required, so long as the evidence taken together is such that a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Lee*, 660 F. App'x. 8, 15 (2d Cir. 2016) (quoting *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011)).   Further, "a jury's verdict may be based entirely on circumstantial evidence."  *Martinez*, 54 F.3d at 1043 (citing *Libera*, 989 F.2d at 601).

Additionally, in contrast to the Defendant's argument, the Government did not rely "exclusively" on an "assumption" that the gunshot victim's excited utterance was referring to the Defendant.  As defense counsel previously argued (Trial Tr. at 585:22–586:4), the testimony "must be read in context of the record as a whole."  *Alioto v Long Island R.R. Co.*, 16-CV-1092 (DRH)(AKT), 2018 WL 4054103, at *5 (E.D.N.Y. Aug. 24, 2018).  The record as a whole supports the jury's conclusion that the person "chewed up" by the victim was Defendant.

Lastly, Defendant argues that Clark's testimony, which the Government exclusively used to show Defendant fired the firearm in his sock, was inconsistent and confusing to the jury.  (Def.'s Mot. at 16-17.)  Defendant argues that Clark's testimony discussing "close range" gunshots would be easily confused with her stricken testimony about "close contact" and "near contact" discharges.  (*Id*. at 17.)  However, the record reflects that prior to the stricken testimony, Clark discussed how

11

the evidence indicated a "closer range" gunshot.  (Trial Tr.at 433:2-5; 438:25–439:3; 442:16–443:5; 446:1-14.)  Therefore, the Government could not have "confuse[d] the jury with their reliance on her contradictory statement" after her testimony was stricken, as the Government asked about closer range shots *before* the stricken testimony.[4]  (Def.'s Mot. at 17.)  Defendant himself admits that a reasonable jury would not have been confused by the striking of the terms.  (*Id.*)  Further, Clark's testimony was not inconsistent.  She clearly articulated the tests she ran and her findings to relay her expert opinion to the jury, which included her conclusion that the firearm was shot at close range to Defendant's sock.

The Court rejects Defendant's challenge to the sufficiency of the evidence.

## CONCLUSION

For the foregoing reasons, Defendant's motion pursuant to Rules 29 and 33 to acquit, or in the alternative, order a new trial, is DENIED.  Defendant failed to meet his burden of demonstrating that, based on the evidence presented at trial, "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt," Fed. R. Crim. P. 29(a),(c); *Jackson*, 335 F.3d at 180 (citing *Reyes*, 302 F.3d at 52), or that a new trial was warranted in the interest of justice.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 115

---

[4] Defendant cites pages 465-466 of the trial transcript for Clark's definition of "close range" gunshots, however these pages merely reflect defense counsel questioning Clark about whether she can determine how close the gunshot was to Defendant:

        Q:     Ms. Clark, you didn't—you're not able to quantify how close, correct?
        A:     Yes.
        Q:     Correct, you're not able to do that, right?
        A:     Correct.
        Q:     All right.  So you couldn't tell me if it was three feet, four feet . . . correct?
        A:     Uh, correct.
        Mr. Burke:     Your Honor, I have nothing further.
(Trial Tr. at 465:20–466:2.)

&116.  Sentencing is scheduled to be in person on September 10, 2021 at 12:00 pm.


Dated:    September 3, 2021                        SO ORDERED:
          White Plains, New York

                                          _____
                                                NELSON S. ROMÁN
                                              United States District Judge