

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

May 20, 2025

**BY ECF & EMAIL**
The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

>    Re:   *United States v. James Bowen*,
>          18 Cr. 205 (NSR)

Dear Judge Román,

   The Government respectfully submits this letter in advance of the above-referenced defendant's supervised release revocation hearing under Fed. R. Crim. P. 32.1(b)(2), currently scheduled for Friday, May 23, 2025, at 10:30 a.m. (the "Hearing"), to set forth the Government's position as to certain evidence it will seek to introduce at the Hearing.

### Witness and Exhibits

   The Government presently intends to call two witnesses at the hearing: Yonkers Police Department ("YPD") Officer Nicholas Carrizzo and U.S. Probation Officer Claire Francisco. The Government will also seek to offer the following exhibits that contain hearsay, copies of which have been produced to Bowen's counsel and the Court (the "Hearsay Exhibits"):

| **Exhibit** | **Description** |
|---|---|
| GX 4 | Footage from Officer Carrizzo's body-worn camera ("bodycam") in which Bowen's victim described Bowen's November 25, 2024 assault on the victim. |
| GX 5 | Officer Carrizzo's November 25, 2024 domestic incident report documenting the November 25, 2024 assault, which includes a sworn statement of Bowen's victim. |

| GX 6 | Probation Officer Francisco's January 28, 2025 Chronos entry documenting a call with Bowen's victim about the November 25, 2024 assault. The Government also anticipates eliciting hearsay testimony from Probation Officer Francisco about her call with Bowen's victim. |

## Legal Position

In a revocation hearing undertaken to determine whether a defendant violated a term of his supervised release, the full range of procedural safeguards provided during a criminal trial does not attach, because an individual accused of violating the terms of supervision already stands convicted. *See United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000) (*citing Black v. Romano*, 471 U.S. 606, 613 (1985)).

The Federal Rules of Evidence "do not apply" at a revocation hearing. Fed. R. Evid. 1101(d)(3); *see also United States v. Bari*, 599 F.3d 176, 179 (2d Cir. 2010) ("[T]he Federal Rules of Evidence, except those governing privileges, do not apply in supervised release revocation proceedings."). Indeed, "[n]either the Confrontation Clause nor the Rules of Evidence proscribe hearsay evidence at revocation hearings." *United States v. Jackson*, 347 F. App'x 701, 702 (2d Cir. 2009) (citing *United States v. Aspinall*, 389 F.3d 332, 340 (2d Cir. 2004); s*ee also United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006). Rather, the protection availed alleged violators of supervised release "takes the form of a collection of due process rights," which are set forth in Federal Rule of Criminal Procedure 32.1(b)(1) and (2). *Sanchez*, 225 F.3d at 175. Among this collection is a defendant's right to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). This right is rooted not in the Confrontation Clause, but rather among the minimum requirements of due process. *See Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972).

The defendant's right under Rule 32.1(b)(2)(C) to confront adverse witnesses is not absolute. For example, hearsay that is not otherwise admissible pursuant to an established exception is admissible in revocation hearings when "good cause" exists to deny the defendant the opportunity to confront the declarant. *United States v. Carthen*, 681 F.3d 94, 100 (2d Cir. 2012) (citing *Williams*, 443 F.3d at 45). To determine whether such good cause exists, a district court "must balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." *Williams*, 443 F.3d at 45 (citing *United States v. Chin*, 224 F.3d 121, 124 (2d Cir. 2000)) (upholding the district court's reliance on hearsay statements after

finding that the declarant, who had been previously injured by the defendant, had a well-founded fear of retribution from the defendant); *Carthen*, 681 F.3d at 101 (absence of a declarant is justified "when 'a defendant has a history of violent conduct [that] ma[kes] reprisal against [the declarant] a possibility'"); *United States v. Peguero*, 34 F.4th 143, 156 (2d Cir. 2022) (finding good cause to admit statements by domestic violence victim where the victim faced a "realistic possibility" of reprisal if she testified based on defendant's history of domestic violence).

## Discussion

The Government respectfully submits that there is good cause to deny the defendant the opportunity to confront his victim, and that the Hearsay Exhibits containing her out-of-court statements should thus be admitted at the Hearing.

At approximately 11:07 AM on November 25, 2024, an individual who identified himself as the victim's brother called 911 and reported to the YPD that his sister's boyfriend (erroneously transcribed as "james bowmen") had beaten her at her apartment at 68 Jackson Street in Yonkers. Officer Carrizzo responded to 68 Jackson Street not long after the assault. When he arrived, Bowen's victim was still bloodied from the beating Bowen had given her, as can be seen in the pictures of her face that Officer Carrizzo took (Exhibits 1-3). Bowen's victim recounted to Officer Carrizzo, while his bodycam was recording (Exhibit 4), that her boyfriend, the defendant, punched her in the face and choked her in an apparent fit of rage when he thought that she might have been unfaithful to him. Bowen's victim swore to the truthfulness of her account in Officer Carrizzo's domestic incident report (Exhibit 5).

Approximately two months later, on January 28, 2025, Probation Officer Francisco spoke with Bowen's victim's, as documented in Exhibit 6. With the passage of time, Bowen's victim's story changed, and she began to minimize Bowen's culpability, while still maintaining his responsibility for her injuries. Bowen's victim noted that she and Bowen were still together and that she did not want to get him in trouble. She told Probation Officer Francisco that, while Bowen did cause her injuries, and that he grabbed her by the neck in connection with an argument about "cheating," she now said that her lacerations were caused by Bowen "accident[ally]" throwing her phone at her. She claimed (apparently unaware that her prior statement had been recorded on Officer Carrizzo's bodycam and memorialized contemporaneously in his report) that the YPD "made up" that Bowen punched and strangled her.

In the immediate leadup to the Hearing, Bowen has come forward with a purported statement from his victim that is diametrically opposed to the ones she gave immediately after the assault and two months later to Probation. As the Court knows, she is now claiming that she was in fact assaulted by an unnamed woman and that

Hon. Nelson S. Román
May 20, 2025
Page 4 of 6

Bowen had nothing to do with it. Bowen says he intends to offer this statement through his counsel's investigator, no doubt because he knows that to call his victim would be to suborn perjury. The Court will recall that Bowen is no stranger to falsehoods, having lied copiously during his testimony at trial, which led the Court to impose an enhancement for obstructing justice in calculating Bowen's Guidelines level at sentencing. (*See* Sent. Tr. at 25).

Earlier today, the Government spoke to Bowen's victim about this unnamed woman, whom the victim identified as "Jen," claiming not to know her last name. The victim also claimed that she no longer had Jen's phone number and did not know Jen's address. In other words, the victim provided the Government with next to nothing to potentially identify and locate the woman whom the victim is now claiming beat her. Bowen's victim also made the dubious claim that she falsely accused Bowen of the assault in retaliation for him cutting off contact with her. In sum, the veracity of the story the victim is now proffering is still very much in question.

Looking at these various statements side-by-side, the Government respectfully submits that the original version that Bowen's victim told to Officer Carrizzo, in the immediate aftermath of the assault, before she apparently reconciled with Bowen and had time to come up with another story, is not only reliable, but the most reliable version of events, and should be admitted at the Hearing through Exhibits 4 and 5.

As an initial matter, as the Court knows, domestic violence victims often do not cooperate in prosecutions against their abusers for fear of being the victim of further violence or out of a desire to patch things up with their abusers. Here, given how badly Bowen beat his victim, it is no surprise that she has been reluctant to cooperate with the Government. Additionally, the Court no doubt recalls Bowen's propensity towards violence from his trial, where the evidence showed that he picked a fight with another man, buoyed by the confidence that he would win that fight because of the gun stashed in his sock. Bowen also has a prior conviction from 2008 for assault in the second degree, for which he received a three-year sentence of imprisonment. (PSR ¶ 38). *See Carthen*, 681 F.3d at 101 ("We have held that good cause justifying the absence of a declarant exists when a defendant has a 'history of violent conduct [that] ma[kes] reprisal against [the declarant] a possibility.'") (citing *United States v. Jones*, 299 F.3d 103, 113 (2d Cir. 2002)); *United States v. Peguero*, 34 F.4th 143, 156 (2d Cir. 2022) (finding good cause to admit statements by domestic violence victim where the victim faced a "realistic possibility" of reprisal if she testified based on the defendant's history of domestic violence in general and specifically against the victim).

Furthermore, given that the victim and Bowen have apparently reconciled, the victim in this case has a significant motive to change her story—indeed, she has said

as much, telling Probation that she did not want to get Bowen into trouble and the Government that she does not want to proceed with this case.

The victim's initial account of events is also corroborated by the 911 call described above. In that call, the victim's brother reported that it was Bowen, not some unnamed female, who put his hands on the victim. The 911 call, too, was contemporaneous to the event and thus also unlikely to be the product of the victim's fabrication.[1]

Even the victim's more recent report to Probation Officer Francisco (Exhibit 6) corroborates the original version of events in certain key details—namely, that the victim was in a relationship with Bowen, that they argued over her alleged infidelity, and that he became violent with her, just not as violent as she originally reported. In that same report, of course, the victim said she did not want to press charges against Bowen, reflecting her desire for him not to be held accountable for his conduct.

Notably, the Government has attempted to secure the presence of Bowen's victim at the Hearing, including by serving her with a subpoena. In light of her evolving story about the November 25, 2024 assault, however, the Government does not have confidence that she will tell the truth if she appears at the Hearing. But for the reasons explained above, there is good cause to believe that the version she told Officer Carrizzo shortly after the assault happened—reflected in Exhibits 4 and 5 and corroborated in certain key details in Exhibit 6—is the most reliable account and should be admitted at the Hearing through the Hearsay Exhibits. *United States v. Jackson*,

---

[1] A recording of the 911 call and the report generated by the 911 dispatcher have been marked for identification as Exhibits 7 and 8, though the Government may not offer them since they contain hearsay within hearsay. The victim's brother called 911 based on what his mother told him about what happened to the victim.

347 F. App'x 701, 703 (2d Cir. 2009) (concluding that the victim's statement was reliable even where victim recanted her original accusations).

      For all of the foregoing reasons, Bowen should be held accountable for assaulting the victim, and there is good cause to admit the victim's out-of-course statements at the Hearing through the Hearsay Exhibits.

      Thank you for your consideration of this matter.

      Respectfully submitted,

      Jay Clayton
      United States Attorney

By: _____
      Benjamin A. Gianforti
      Assistant United States Attorney
      (212) 637-2490

cc: Michael Burke, Esq. (by electronic mail and CM/ECF)